MARTHA A. COOMBS, APPELLANT, v. SALT LAKE AND FORT DOUGLAS COMPANY, RESPONDENT.

TRESPASS.—IMPROVEMENTS.—ESTOPPEL.—Where a party enters upon land of another, knowing that the entry is without right or title, and maintains his possession of such property without the owner's permission or consent, such party obtains no right to said land, which can ripen into a right of possession except by adverse possession for the statutory period, even though the owner makes no objection and the trespasser makes valuable improvements.

RAILROADS.—RIGHT OF WAY.—INJUNCTION.—The owner of land who stands by and makes no objection to the entry of a railroad company upon his land, and to the construction of a railway track thereon, does not by his mere silence and inaction lose the right to obtain an injunction restraining the operation of such railroad, unless damages are paid for the land.

APPEAL from a judgment of the district court of the third district, Hon. George W. Bartch, judge. The opinion states the facts.

Mr. *James A. Williams* for the appellant.

Mr. *Le Grande Young,* for the respondent.

In this case the findings show that the construction across the defendant's lot was done in 1887, and that large quantities of coal and other material were shipped over the road daily to parts of the city lying east of the premises; that the defendant, the Salt Lake & Fort Douglas Railway Co., in 1890, had issued a series of bonds which were outstanding and unpaid, and that during the construction of the road plaintiff stood by and saw the same in course of construction without protest or objection. On these grounds and for these reasons the court below maintained that while plaintiff had a right to compensation for the injury she had suffered, she was estopped both by her action and laches from obtaining injunctive relief. That the court is borne out in this action by the weight of authorities in the different states certainly cannot be questioned. On this point I refer the court to the following authorities: *Goodin* v *Cin. Railroad,* 18 O. St. 160; *Strickler* v. *Midland Railway,* 25 Northeastern Rep. 455; *Railroad Company* v. *Sultweddle,* 116 Ind. 257; *Same Case,* 19 Northeastern Rep. 111; *Railroad Company* v. *Beck,* 119 Ind. 124; *Louisville, Etc., Ry. Co.* v. *Beck,* 21 N. E. Rep. 471; *Lorie* v. *Railroad,* 32 Fed. Rep. 270; *Hentz* v. *Railroad,* 13 Barbour, 646; *Erie Ry. Co.* v. *Delaware Ry. Co.,* 6 C. E. Green, 283; *Pensacola Ry. Co.* v. *Jackson,* 21 Fla.; *Griffin* v. *Agusta Ry. Co.,* 70 Ga. 164. It is conceded by plaintiff that she does not own the fee in front of her place; she has but an easement to the streets in front of her property. It is laid down by some courts of high

authority that an abutting owner cannot enjoin at all when the fee of the street is in the city.    84 Ill. 135; 106 Ill. 60; *Lorie* v. *Railroad,* 32 Fed. Rep. 270; and cases there cited.

ZANE, C. J.:

It appears from this record that the plaintiff was at the time of the wrong complained of, and from thence hitherto, the owner of the north half of lots 3 and 4 in block 1, plat G, Salt Lake City; that they are bounded on the west by U street, and on the north by First street; that about the 1st day of June, 1888, the defendant completed its railway on that part of the streets mentioned, and commenced running trains thereon; that, in constructing its road, it took a few feet off of the corner of one fractional lot, and ran its track diagonally across U street, on the west side of the lots, and along First street, on the north side of them, and in so doing made a deep cut in both streets, so that communication between the lots and streets was very materially interfered with; and that the noise of defendant's trains, and the smoke and cinders from its engines, in operating the road, greatly depreciated the value of plaintiff's ground.    It further appears that plaintiff took no steps to prevent the construction of the road, by applying for an injunction or otherwise, nor does it appear that she consented to its construction.    It also appears that the road was constructed with the permission of the city council, and that all the property of the defendant is mortgaged to its full value, and that the company is perfectly insolvent.    On March 1, 1892, the plaintiff commenced this action, and prayed that the defendant might be enjoined from operating its road on that part of its line described, unless within a definite time, to be named by the court, it should pay the plaintiff such damages as the court might assess, upon the delivery or tender of a deed by plaint-

iff, transferring the land taken and the easement interfered with in the streets appurtenant to the lots. Upon the hearing of the cause the court found for the plaintiff $3,-397.50, and entered a decree therefor, and costs against the defendant, but denied the prayer for the injunction. From this decree the plaintiff has appealed to this court, and assigns the refusal to grant the injunction as error.

Salt Lake City held the title to the streets in question for the use of the public, and the owners and occupants of abutting lots. The latter had a common right, with all others, to travel upon them, and also the right to pass to and from her premises from and on to the adjoining streets, and in that way to occupy and use them. While the occupants of lots use the contiguous streets in common with the public, they make a special use of them, and receive special benefits from them. Referring to the doctrine announced by the New York court of appeals, Judge Dillon says: "The result of the author's reflections upon this subject is that the views of the court of appeals are sound and just; sound, because they recognize the paramount nature of the public right to put the street to this new and necessary use; just, because they recognize and declare that the abutter has special proprietary rights or easements in the streets, which, so far as they are special and individual in their nature, he is not called upon, unequally, to sacrifice, without compensation, for the public use. In effect, the court says the just and true doctrine is, 'Take, but pay.'" 2 Dill. Mun. Corp. (4th Ed.) § 723c. This court also held the same doctrine in the case of *Dooly Block* v. *Salt Lake Rapid Transit Co., ante,* 33 Pac. Rep. 229, (decided at the present term.) The defendant had no legal or equitable right to any part of plaintiff's lots, or any right to deprive her of her easement in the streets, or to interfere with her enjoyment of her property, without her consent, or without condemnation and compensa-

tion in pursuance of the law of eminent domain. As the owner of lots adjoining the streets she might, by her language or conduct, indicate her consent to the appropriation and use of them, and their appurtenant rights, but she will not be held to have done so, from mere silence and inaction, until barred by the statute of limitations. When compensation was refused, the plaintiff had the right to avail herself of such remedy as the law afforded; and, that being inadequate, she could resort to an equitable remedy, if such remedy remained.

The court below assessed plaintiff's damages for the land taken, and for the interruption of the use of the streets in connection with her lots, and their depreciation in consequence of the operation of the road, at $3,397.50. We have seen that these cannot be collected by a seizure and sale of defendant's property, because of the defendant's insolvency. The plaintiff has not parted with her title to the land taken possession of and used by the defendant, nor has she transferred to it her easement in the streets appurtenant to her land, which the defendant is depriving her of, nor has she released to it any damages she has or will sustain in consequence of the existence and operation of defendant's road. The defendant is using plaintiff's land without her consent, and refusing to pay her for it, and is depriving her of rights appurtenant thereto, and annoying her with cinders, smoke, and noise. For the redress of these wrongs, the law furnishes her no adequate remedy. The foregoing facts present the question, has the court the power, according to equitable principles, to require the defendant to pay plaintiff for her land appropriated and used by it, and for her easement in the streets appurtenant thereto, or to surrender such possession and use?

If a person takes possession of property without the owner's consent, he should return it, or pay for it, or, if

he establishes and conducts a business on his premises that prevents his neighbor from enjoying his, he should pay damages, or stop. But it is said that the defendant has been operating its road for nearly four years without objection, and has made large expenditures in the construction, equipment, and operation thereof, and that it would be unjust to stop it now. If defendant has taken possession of plaintiff's property without her consent, and cannot pay for it, justice demands that the property should be returned. It is also claimed that it would be unfair to the mortgagees of the road to stop its operations now. Such creditors should have inquired as to the title of the property before advancing money upon it, and if the property of third parties, without their consent, were in the possession and use of the mortgagor, their equities would be superior to such creditors. It is also insisted that the public have an interest in this road, and rights have been acquired, and expenditures of money made, in anticipation of its continued operation. It may be said, if the benefits of the use of the road to the public do not equal its cost, it had better quit. All of us have no better right to appropriate property without the owner's consent, and without compensation, than one of us has.

In the case of *Galway* v. *Railroad Co.*, 128 N. Y. 132, 28 N. E. Rep. 479, the defendant had completed its elevated railway in the street upon which plaintiff's lots abutted ten years before suit was instituted, and had been operating it. The judgment of the lower court was affirmed, granting relief by injunction unless the defendant should pay to the plaintiff, within a limited time, the sum of $20,000, as the depreciation of the value of the premises, caused by the railroad, and, upon such payment being made, requiring the plaintiff to execute to the defendant a conveyance of the easement. To the same effect is the case of *Knox* v. *Railway Co.*, (Sup.) 12 N. Y. Supp. 848.

In the case of *Tallman* v. *Railroad Co.*, 121 N. Y. 119, 23 N. E. Rep. 1134, the court used this language: "When the defendant began to construct its railway in front of the plaintiff's lots, he could have commenced an action in equity against it, and restrained it until it had made compensation to him for the rights and easements which it took from him, or until it had acquired them by condemnation proceedings. *Story* v. *Railroad Co.*, 90 N. Y. 122. In that way he would, at least in the theory of the law, have been indemnified for all the damage he would suffer by reason of the construction of the railway. Instead of taking his remedy by an equitable action at that time, he could have taken it at any time afterwards, during his ownership of the lots, with the same result."

The respondents refer us to cases, however, holding that the owner of land waives his right to an injunction against a railway company if he permits it, without objection, to construct its track upon his land, or to construct it in a street upon which his land abuts, so as to deprive him of his special easement therein. Some of these authorities except cases in which it appears that the writ is essential as a last resort. The rule is laid down in High on Injunctions (volume 1, 3d Ed. § 643) as follows: "As in all cases of the exercise of the strong arm of equity by injunction, the right to the relief may be lost by one's own negligence and delay in seeking protection; and where the owner of land over which a railway has been constructed has stood quietly by, and neglected to insist upon compensation at the time his land was taken, and has waited until the road was in full operation before asserting his rights, he will not be permitted to restrain its operation. In such case an injunction, if granted at all, should only be allowed as a last resort, and after all ordinary means of relief have proved ineffectual." This rule authorizes an injunction after all ordinary means fail,—as a last

resort.    This same qualification to the general rule as above stated is mentioned by the court in *Hentz* v. *Railroad Co.*, 13 Barb. 646, cited by defendant.    Booth, St. Ry. Law, § 189.    Upon principle, and in the light of authority, our conclusion is that a lot owner does not waive his right to an injunction by mere silence and inaction at the time his land is taken; and, further, if the lot owner is without any adequate remedy at law, it is the duty of the court to enjoin the company's use of his property, unless, within a specified time, it will pay the damages assessed.    It follows that the court below erred in not granting the injunction prayed, upon the conditions named.    Judgment reversed, and the case is remanded.

MINER, J., and SMITH, J., concurred.