In the Matter of the Application of PASCAL C. J. DeANGELIS and Others, Constituting the Board of Education of the City of Utica, N. Y., Petitioners, for a Mandamus Order against DANIEL LAINO and Others, Respondents.

Supreme Court, Oneida County, July 30, 1931.

*Kernan & Kernan*, for the petitioner.

*J. Herbert Gilroy, Corporation Counsel of the City of Utica*, for the respondents.

DOWLING, J.   Since this matter was before the court in the first proceeding (141 Misc. 518), the board of education, by appropriate resolution, has declared the existence of an emergency relating to fire hazard in the schools mentioned in the petition herein, and has determined that, in order to eliminate said emergency, it is necessary to install a sprinkler system and a fire tower (which means a fireproof stairway) in each of the schools in question. The board has also duly requested the common council of the city of Utica to make available immediately sufficient funds for the installation of fire towers in said school buildings, which the common council has declined to do.

The board of education institutes this proceeding to compel the respondents to make immediately available said funds for erection of fire towers only.

The mayor of the city and the common council have filed separate answers to the petition and Mayor Donnelley and Alderman Thomas also submit affidavits giving their views of the instant matter.

The mayor contends, in his answer and affidavit, that no emergency exists in the schools in question and that it is not necessary to construct any fire towers except in the Miller street school; that by installing a fire tower therein, at a cost of $8,000, and by expending $7,000 in making some structural changes in the other nine buildings, all said buildings will be rendered safe for pupils and teachers, so far as the element of fire hazard is concerned.

The answer of the common council admits substantially all of

the allegations of the petition, except it denies the existence of an emergency and the right of the board of education to compel it to make available funds for the erection of fire towers or sprinkler systems.

After the board of education had decided to erect fire towers in said school buildings, the mayor of the city requested Fire Chief Joseph N. Sullivan and Charles Kiehm, superintendent of buildings of the city of Utica, to inspect said buildings and to report to him their conclusions as to the necessity of added fire protection therein. On the 26th of April, 1931, Mr. Kiehm and Mr. Sullivan handed up their report to the mayor and on the fifteenth of May his honor transferred a copy thereof to the board of education. In their report they advocate the installation of sprinklers in all of the said buildings and in some of them the erection of fire escapes, also a fireproof exit in the Miller street school and certain structural changes in the other buildings, at an estimated cost of $160,000.

In his letter to the board of education, dated May 15, 1931, inclosing the Kiehm and Sullivan report, the mayor writes: " I would strongly urge prompt action, in order that the installation of fire sprinklers and the necessary alterations may be immediately undertaken at the close of the present school year, which is only a matter of a few weeks."

On July 16, 1931, the mayor sent the following communication to the common council of the city of Utica:

" THE CITY OF UTICA
OFFICE OF THE MAYOR
" UTICA, N. Y.
" July Sixteenth, 1931.

" To The Members of the Common Council of the City of Utica, New York:

" GENTLEMEN: Pursuant to authority vested in me by law, I hereby call a Special Meeting of the Common Council of the City of Utica, to be held in the Common Council Chambers, City Hall, on Friday Evening, July 17th, 1931, at 7:30 P. M., for the following purposes:

" 1. To adopt a suitable ordinance or ordinances authorizing public improvement bonds in the sum of $167,500.00 for the following purposes:

" A. To provide for 100% sprinkler installation in the public schools of the City of Utica for the protection of the occupants of said buildings.

" B. To provide for the necessary alterations, constructions and changes essential to our public buildings, pursuant to the recom-

mendations contained in the joint report of our two local experts, Charles Kiehm, Superintendent of Buildings, and Fire Chief Joseph N. Sullivan.

"The 100% sprinkler installation and the carrying out of the recommendations contained in the joint report of Messrs. Kiehm and Sullivan will furnish adequate fire protection for the lives of the children and teachers of our Utica Public Schools.

" C. To provide for a modern, fire proof, portable school building to be erected in the Seventeenth Ward on the site located in the Ridgewood development now owned by the City of Utica.

" 2. To adopt a suitable ordinance authorizing and providing for the issuance of certificates of indebtedness or revenue bonds in the sum of $60,000.00 for the Department of Public Welfare to be used by that Department in continuing the effective and humanitarian work, which they are so ably carrying on under the most serious economic depression our Nation has ever experienced.

" In my judgment said Special Meeting to be held is required by public necessity.
" Yours truly,
" (Signed)        CHARLES S. DONNELLEY,
" Mayor."

From the foregoing, one cannot escape the conclusion that a serious condition, in regard to fire hazard, exists in ten of the Utica public schools that the position of the mayor in respect thereto is inconsistent; that one moment he pleads to keep the expenditure down to $15,000 to protect the tax rate and to prevent encroachment upon the debt limit of the city, claiming such an expenditure will render the schools safe from fire hazard; that the next moment he favors the installation of sprinklers in all ten schools, a fire tower in Miller street school and structural alterations in some of the other buildings, at a cost of $160,000 as against the board of education's program of fire towers in all of said schools at a cost of $148,500; that he is willing that the council make available $160,000 to carry out·his and the Kiehm and Sullivan programs, but is unwilling that the council should appropriate $148,500 to carry out the program of the board of education.

It is not the duty of the common council, chief of the fire department, superintendent of buildings or the mayor·of the city to determine when an emergency exists in respect to the public school buildings of the city. That duty rests squarely upon the board of education.

Both the Strayer and the Kiehm and Sullivan reports advise the board of education that a serious condition in respect to fire hazard exists in said schools and both advocate prompt action to

remedy the same. The board has also made, through a committee, a private investigation and the report of the committee advocates the installation of both sprinklers and fire towers in said schools. With these reports and this information in hand, the board of education declared that an emergency exists in respect to fire hazard in said schools.

There is no charge made by respondents that there was any fraud, capriciousness or bad faith upon the part of the board in declaring the existence of such emergency. This being so, the court cannot, and should not, go behind such determination of the board. (*Van Campen* v. *Olean General Hospital*, 210 App. Div. 204, 209; *Hentz* v. *Long Island R. R. Co.*, 13 Barb. 646, 649; *Matter of Grade Crossings* [*N. Y. C. R. R. Co.*], 255 N. Y. 320, 322.) The declaration of the board of education that an emergency exists in respect to the fire hazard in said school buildings is *prima facie* evidence of the existence of such emergency and places the burden on the common council and the mayor, respondents herein, to show the contrary. (*Los Angeles Dredging Co.* v. *Long Beach*, 71 A. L. R. 161, 171.) Not only have they failed to meet this burden with any evidence, but, on the contrary, they have established, by their own proof, the existence of an emergency in each of said school buildings.

The papers show that upon October 6, 1930, fire drills were held in each of said school buildings and that they were completely emptied of pupils in time ranging from thirty seconds to two minutes and forty-five seconds. The fire department of the city, by actual tests, have reached each of said school buildings in time ranging from one and a half minutes to five minutes.

It is quite obvious that if sprinkler systems were installed in the said buildings, as recommended by Messrs. Kiehm and Sullivan, and urged by the mayor, in case of fire, the pupils and teachers would either be suffocated by smoke, or would be safely out of the buildings, before the sprinkler systems could possibly get into play. Sprinkler systems are designed primarily for the protection of buildings. In the event of fire, when children are excited, it would seem that to precipitate upon them a shower of water would engender confusion and panic and retard their chances of escape.

The whole matter comes to this, if sprinkler systems are installed, adequate fire protection will be rendered the buildings, most of which must soon be razed, but so far as pupils and teachers are concerned, the present hazard will still exist. Moreover, it would seem to be the utmost folly to expend approximately $145,000 sprinklerizing buildings that must be scrapped within the next five years. If fire towers are installed, the buildings may suffer

in case of fire, but pupils and teachers will be protected by having ample means of exit from said buildings. If fire towers are installed, any emergency so far as the pupils and teachers are concerned, will be eliminated. If sprinkler systems are installed, the emergency complained of will still be present. The object of this proceeding is to remove the emergency so far as the safety of children and teachers is concerned. Towers will do this, sprinklers will not. Towers it must be.

This court cannot determine as to the advisability of installing either fire towers or sprinkler systems in said school buildings. It is confined in this matter to the facts submitted and to the law applicable thereto. The facts present no issue to be tried. Upon the law, petitioner is entitled to the peremptory order of mandamus prayed for herein.

Ordered accordingly.