JOHN M. KNOX AND OTHERS, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF RICHARD SMITH CLARK, RESPONDENTS, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY AND THE MANHATTAN RAILWAY COMPANY, APPELLANTS.

*Executors and trustees may recover the damage caused to property by an elevated railroad, as well that caused before as that arising after their testator's death — effect of acquiescence in a trespass — remedy.*

In an action brought to restrain the operation of an elevated railroad by the executors and trustees under the will of a deceased owner of property abutting upon the street through which said railroad runs, the plaintiffs are entitled to recover such damages as resulted from the loss of rental values during the testator's lifetime, and also such as resulted from the operation of the defendant's road subsequent to the testator's death, and can recover in one action in both capacities.

No acquiescence, short of twenty years, will bar a party from complaining of a nuisance, unless by some act or omission he has induced the party causing it to incur large expenditures or to take some action upon which an estoppel may be based.

Where a structure is authorized by law which, without such authority, would constitute a nuisance, the same rule applies, and a person whose property rights are taken may complain of a failure on the part of the railroad to offer him due compensation or to condemn his property under the right of eminent domain.

The mere failure to assert his rights while an elevated road is in process of construction does not preclude an abutting owner damaged thereby from maintaining an action for damages or an injunction, or operate as an estoppel against him.

The only remedy by which a party, under such circumstances, can obtain just compensation for the property taken, is by an action in equity to restrain the continuance of the trespass, and to deprive him of an injunction *nisi* would be to leave him remediless.

A judgment will not be reversed on appeal because of inconsistent conclusions of law, where the judgment directed to be entered is in accordance with the correct conclusions of law on the facts found.

APPEAL by the defendants from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 12th day of June, 1890, in favor of the plaintiffs, after a trial at Special Term in the county of New York.

The action was brought to obtain an injunction restraining the operation of the defendants' railroad, in front of plaintiff's premises Nos. 767, 769 Sixth avenue, and to recover the damages resulting from loss of rents occasioned by such use.

The judgment directed that the defendants should deliver to the plaintiffs, or their attorneys, a written offer to pay to the plaintiffs the sum of $10,500, and interest from the date of entry of the judgment, and that, upon the plaintiffs tendering to defendants, within thirty days after judgment, a duly executed conveyance or grant of so much of the property of the plaintiffs in Sixth avenue, and the easements appurtenant to the abutting property described in the judgment, as had been taken or appropriated by the defendants for the purposes of their railroad, that said defendants pay said sum of $10,500, with interest, to the plaintiffs, in which event the injunction which was granted by said judgment perpetually enjoining and restraining the defendants from maintaining, or in any way using, the elevated structure on Sixth avenue, in the city of New York, in front of or adjoining the plaintiffs' premises, should be inoperative and void.

*E. C. James*, for the appellants.

*J. E. Burrill*, for the respondents.

BARRETT, J.:

It is contended that the plaintiffs cannot maintain this action because, in the caption of their complaint, they have styled themselves "as executors" and not "as trustees." In the body of the complaint, however, they set forth the testator's will and allege the devise of the property in question (under the residuary clause) to his executors in trust to divide the same into eight equal parts, and to hold one of said parts for the benefit of each of eight grandchildren during his or her natural life, and to receive the rents, issues and profits thereof and to apply the same to the use of such grandchild during his or her natural life. It was proper, under such circumstances, to describe the plaintiffs as "executors." They are, *ex officio*, invested with the title for trust purposes, and as such they are entitled to maintain the action. Were it otherwise, the averments in the complaint are sufficient to affix to the plaintiffs their proper representative character, and when that appears in the body of the complaint an erroneous description in the caption is immaterial. (*Stilwell* v. *Carpenter*, 2 Abb. N. C., 238; *Beers* v. *Shannon*, 73 N. Y., 297.)

It is also claimed that the plaintiffs did not take title under Mr. Clark's will, or rather that their title was deferred until the actual partition of the estate into eight parts, and that, until such division, the fee passed to the heirs-at-law, subject to the execution of the power to divide, etc. This is an inaccurate view of the legal effect of the will. Under the sixth clause the residue of the estate, real and personal, was devised to these executors "in trust to receive the rents, issues and profits thereof, and to apply the same to the use of my said grandchildren during their respective natural lives, one share being held in trust for each grandchild." Under this clause the executors took the whole estate, in law and in equity, subject only to the execution of the trust. This is entirely consistent with the creation of eight separate trust estates. In law the separation of the trust estates is effected by the provisions of the will, and this is not dependent upon an actual division or partition in specie. Prior to such actual division or partition, the executors,

in their trust capacity, are vested with each of the undivided eight shares in trust for each of the eight grandchildren, and thus they are vested with the whole. The absolute power of alienation is not unlawfully suspended by the consolidation of an estate into one trust so long as it is a "trust for distribution and payment to each bene-ficiary or class of beneficiaries upon the events specified in the will." (*Wells* v. *Wells*, 88 N. Y., 332, 333; *Monarque* v. *Monarque*, 80 id., 324; *Stevenson* v. *Lesley*, 70 id., 515.) In such a case the trustees are vested with the whole estate just as all the tenants in common of a piece of real estate are so vested, but the legal rights of each *cestui que trust* are separate and distinct.

The plaintiffs' rights are not affected by the death of one of these eight grandchildren (Mary C. Le Roy) subsequent to the commence-ment of this action. Damages were not awarded to the plaintiffs for trespasses committed after Mary C. Le Roy's death. Such damages were limited to the time of the commencement of the action. The plaintiffs were clearly entitled to all these damages. As executors, they were entitled to such as resulted from loss of rental values in the testator's lifetime. As trustees, in their executorial capacity, vested with the fee, they were entitled to such as resulted from loss of rental values after the testator's death. And in such an action as the present they could recover in both capacities. (*Shepard* v. *Manhattan Railroad Company*, 117 N. Y., 442.) Upon the issues as they stood at the time of the trial, they were also entitled to an injunction. There was no plea of a defect of parties, and no injustice was done by a refusal to permit the cause to stand over to enable the defendants to raise this technical point.

Upon the death of Mary C. Le Roy the undivided share held in trust for her passed, under Mr. Clark's will, to the other seven grandchildren. The court provided that the injunction, to which the plaintiffs were absolutely entitled under the pleadings as they stood, should not go into effect in case the defendants tendered the adjudged value of the easement. And upon such tender the court required the plaintiffs to deliver to the defendants a proper conveyance, duly executed by all of these seven grand-children, as well as by the executors and trustees. The court thus made ample and even superfluous provision against any possible prejudice to the defendants resulting from the failure to make

these seven grandchildren parties.    We say superfluous, because the
plaintiffs, even after the vesting of Mary C. Le Roy's share in these
seven grandchildren, had a power of sale entirely sufficient to confer
upon the defendants a perfect title to these easements.

There is nothing in the point as to the statute of limitations.    The
trespasses are continuous and a cause of action accrues daily.
The equitable cause of action which accrued ten years ago resulted
from the continuous trespasses then committed.    The present cause
of action is based upon the continuous trespasses of to-day.    There
can be no limitation to such action, whether legal or equitable, short
of the twenty years from which a grant is presumed.

There is no greater force in the claim of acquiescence, and the
cases cited by the appellants on that head (including specially *Hentz*
v. *Long Island Railroad Company*, 13 Barb., 655 ; *McAulay* v.
*Western Vermont Railroad Company*, 33 Vt., 311 ; *Goodwin* v.
*C. and W. Canal Company*, 18 Ohio St., 169), are entirely inappli-
cable.    They proceed either upon the doctrine of estoppel or upon
the principle that an injunction should not be granted until all the
ordinary means for obtaining indemnity have failed.    The rule
governing estoppel is clearly inapplicable.    To constitute an equita-
ble estoppel there must have been some act or admission by the party
sought to be estopped inconsistent with the claim he now makes, and
done or made with the intention of influencing the conduct of
another, which he had reason to believe would, and which did, in fact,
have that effect.    Silence will not estop unless there is not only a
right but a duty to speak.    (*N. Y. Rubber Co.* v. *Rothery*, 107
N. Y., 310.)    In *Campbell* v. *Seaman* (63 N. Y., 568) it was held
that no acquiescence short of twenty years will bar one from com-
plaining of a nuisance, unless by some act or omission he has induced
the party causing the nuisance to incur large expenditures or to take
some action upon which an estoppel may be based.    (See, also,
*Haight* v. *Price*, 21 N. Y., 246.)    In *Chapman* v. *City of Roches-
ter* (110 N. Y., 277) the question of estoppel by acquiescence was
also considered.    The city had there constructed sewers in such a
manner as to render the water in a creek above the plaintiff's land
unfit for use.    DANFORTH, J., speaking for the court, said that the
plaintiff was not estopped by acquiescence in the proceedings of

the city in devising and carrying out its system of sewerage. "It does not appear," he observed, "that the plaintiff in any way encouraged the adoption of that system, or by any act or word induced the city authorities to so direct the sewers that the flow from them should reach his premises."

The defendant's structure, being authorized by law, is not a nuisance, but for that very reason the rule enunciated in *Campbell* v. *Seaman* and *Chapman* v. *City of Rochester* should be applied, and applied even more stringently than in the case of a nuisance. Where the structure is authorized by law the property owner cannot complain of it *per se.* His only complaint is of the failure to offer him due compensation or to condemn his property under the right of eminent domain. In the present instance it cannot truly be said that the property owners stood by and permitted large or any sums to be expended on the faith of their apparent acquiescence. Acquiescence in what? In the building of the road? Yes, but, even as to that, the word "resignation" would better express the property owner's condition. Not, however, in the taking of their property without compensation. The elevated railroad was constructed with the clear understanding that there was no such acquiescence. It was constructed, as already suggested, under legislative authority , authority claimed to be sufficient to entitle the promoters of the enterprise to appropriate these easements without compensation. The property owners saw the road built regardless of their wishes and in defiance of their rights. It has been repeatedly held, and it is sound doctrine, that failure to assert their rights while the road was in process of construction did not, under the circumstances, work an estoppel. The promoters of the railroad proceeded in reliance upon what they supposed to be the law (*Powers* v. *Manhattan Railroad Company*, 120 N. Y., 178), not at all in reliance upon the property owner's inaction. And the latter's acquiescence was, as we have seen, only in the construction of the road under legislative authority, not in the appropriation of their easements without just compensation. The road was built in the year 1878, and it was not until the year 1882 that the Court of Appeals finally decided that compensation was a right. (*Story* v. *N. Y. Elevated Railroad Company*, 90 N. Y., 122.) Even after this decision the property owner had no direct means of compelling compensation. He cannot apply

under the act with regard to condemnation proceedings nor can he compel the corporation to apply. He certainly cannot maintain ejectment for the easements of light, air and access. Nor can he secure the value of his easements in actions of trespass for the damages sustained day by day. (*Pond* v. *Metropolitan Elevated Railway Company*, 112 N. Y., 186.) "A recovery of judgment for damages for a trespass or the invasion of an easement," said ANDREWS, J., in the *Pond Case*, "does not operate to transfer the title of the property to the defendant, either before or after satisfaction, nor does it extinguish the easement."

The only remedy, then, whereby just compensation for the property taken can be compelled is an action in equity to restrain the continuous trespasses. To deprive the plaintiff of an injunction *nisi* would, therefore, be to leave them remediless in that regard. It would be to admit the existence of a distinct wrong without a specific remedy, and it would also be to permit the possibility of the wrong ripening by presumption into a right. It was held in *Campbell* v. *Seaman* (*supra*) that under our present system the right to an injunction in a proper case is just as fixed and certain as the right to any other provisional remedy. It is no longer a matter of grace, "except," as EARL, J., observed, "that it rests in the sound discretion of the court, and that discretion is not an arbitrary one." "It can rightfully be demanded to prevent irreparable injury, interminable litigation and multiplication of suits."

We think, therefore, that the remedy by injunction was properly granted in the present case.

The only other point calling for special consideration is that based upon the seeming inconsistency in the conclusions of law found by the learned judge at Special Term.

In the fifteenth and sixteenth findings of fact the learned judge finds the diminution of the rental value of the plaintiffs' premises, caused by the erection, maintenance and use of the defendants' railroad from the 14th day of June, 1883, to the 14th day of June, 1889. In the first conclusion of law he finds that the plaintiffs are entitled to recover from the defendants the damages awarded by these findings of fact.

At the request of the defendants, however, he found, in the fourth conclusion of law, that the plaintiffs are not entitled to recover any

damages in this action which occurred prior to the death of their testator, the 11th of July, 1884. This was plainly an inadvertence. The learned judge had already found, and correctly, that the plaintiffs were entitled to recover these very damages. If the inconsistency had been in the findings of fact, the appellants might have invoked the rule that where such findings are irreconcilable, those most favorable to them should be taken. (*Redfield* v. *Redfield*, 110 N. Y., 673.) There is, however, no inconsistency in the facts found, and upon these there can be no doubt as to the proper conclusion of law. It is that the plaintiffs are entitled, as found in the first conclusion of law, to recover the sums specified in the fifteenth and sixteenth findings of facts. We agree with the Superior Court in *Welsh* v. *Metropolitan Elevated Railway Company* (57 Supr. Ct. Rep., 411, INGRAHAM, J., writing the opinion), that " no principle requires us to reverse a judgment, because of inconsistent conclusions of law, when the judgment directed to be entered is in accordance with the correct conclusions of law on the facts found."

The sums awarded for past damages and allowed for the value of the easements were reasonable. We have examined the evidence on this head and see no reason for disturbing the findings of the learned judge at Special Term. And we are at a loss to understand what the appellants mean by the assertion in their brief that these sums have been awarded arbitrarily and without evidence to sustain them. Such assertions are gratuitous and without justification in the record.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and BARTLETT, J., concurred.

Judgment affirmed, with costs.