FOWLER v. GOWING.

(Circuit Court, N. D. New York. April 20, 1907.)

1. TRUSTS—CREATION—ACTS OF DONOR.

Defendant set apart certain money of his own, to the amount invested in certain of the installment stock of a loan association, and procured the stock to be issued in the names of his children, respectively, adding his own name as trustee. When the stock matured and was paid, the checks were made payable to defendant as trustee for each of the interested children, after which defendant invested the funds in the form of such checks in the stock of a bank, distinctly declaring to the bank's officers at the time the stock was purchased that he desired to invest the funds "for the benefit of his children in the stock of the bank." The stock was thereupon issued to defendant as trustee for each of the children, and at this time defendant, in his own books, opened an account between himself as trustee for the children, naming them, and himself individually, in which he declared that as trustee he had received checks of the loan association of the value of $5,000, and as such trustee had purchased and then held 45 shares of the stock of the bank. He thereafter received the dividends on the stock, as trustee, but put the money in his own individual account, from which he also paid taxes on the stock and subsequently purchased five additional shares, partly with the money belonging to the trust fund and partly with his own money, and on the failure of the bank he charged "Profit and Loss" with the difference between the amount advanced and the amount he subsequently received in dividends, etc. *Held*, that such acts constituted an irrevocable trust of the shares for the benefit of the children.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 53.]

152 F.—51

2. BANKS AND BANKING—NATIONAL BANKS—STOCKHOLDER'S LIABILITY—TRUSTEES.

Rev. St. § 5151 [U. S. Comp. St. 1901, p. 3465] provides that shareholders of every national bank shall be individually responsible for all contracts, debts, and engagements thereof to the extent of the amount of their stock therein at its par value, in addition to the amount invested in such shares, and section 5152 declares that persons holding stock as trustees shall not be personally liable for any liabilities as stockholder, but the estates and funds in their hands shall be liable in like manner as if the person beneficially interested held the stock in his own name. *Held*, that where a father voluntarily declared a trust of certain shares in a national bank for the benefit of his children in good faith, and not for the purpose of evading liability, and did not hold himself out as the owner of the stock individually, he was not personally liable as a stockholder on the failure of the bank.

[Ed. Note.—Who liable as shareholders in national banks, see note to Beal v. Essex Savings Bank, 15 C. C. A. 130; Earle v. Carson, 46 C. C. A. 503.]

3. TRUSTS—TRUST FUNDS—INVESTMENT.

The rule that trustees are not authorized to invest trust funds in the stock of national banks has no application to a trust voluntarily created by a donor as to such stock.

4. BANKS AND BANKING—NATIONAL BANKS—FAILURE—STOCKHOLDER'S LIABILITY—TRUST.

Where stock in a national bank at the time of its failure was held by a trustee for the benefit of his children, the fact that the trust estate was wiped out of existence, so far as value or financial responsibility was concerned, by the failure of the bank, did not charge the trustee individually as a stockholder with the additional statutory liability imposed by Rev. St. §§ 5151, 5152 [U. S. Comp. St. 1901, p. 3465].

This is an action to enforce and collect of the defendant individually assessments upon stock of the American Exchange National Bank of Syracuse, N. Y., levied by the Comptroller of the Currency of the United States under the provisions of section 5151, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3465], and which stock was issued in the name of and stood upon the books of the said bank in the name of "D. H. Gowing, Trustee."

Fowler, Crouch & Vann, for complainant.
White, Cheney & Shinaman, for defendant.

RAY, District Judge. This action comes before the court upon an agreed or stipulated state of facts; the material ones being as follows:

(1) The American Exchange Bank of Syracuse was organized on or about December 1, 1897, under the banking laws of the state of New York, and did business as such until about the 12th day of April, 1900, when it was duly reorganized as and became a national banking corporation and subject to the national banking laws. The old stockholders took stock in the new bank thus reorganized for the same amounts, respectively.

(2) The new or national bank continued to do business as such until on or about February 10, 1904, when, being insolvent, and its capital stock having become impaired and worthless, it ceased to do business and closed its doors.

(3) Thereupon a receiver of said bank was duly appointed, and later the complainant here was duly appointed receiver thereof to succeed the original receiver and now is such.

(4) The capital stock of the bank was $200,000, divided into 2,000 shares of the par value of $100 each.

(5) About August 9, 1904, the Comptroller, having found and determined that in order to discharge the debts and liabilities of said bank it was necessary to enforce the individual liability of the stockholders to the extent of $134,000, duly made an assessment and requisition upon the stockholders of said bank to the extent of $67 upon each and every share.

(6) The defendant, D. Henry Gowing, at the time of such failure of said bank, was the owner in his own name and right standing in his own individual name of 60 shares of the stock of said bank, and such assessment thereon he duly paid.

(7) The defendant at such time also held and had in his possession 50 shares of the capital stock of said bank issued to him in the name of "D. Henry Gowing, Trustee" and standing in the name of "D. Henry Gowing, Trustee" on the books of said bank.

(8) It is to collect the said assessment on these 50 shares of stock, so issued to "D. Henry Gowing, Trustee," of the defendant individually, that this action is brought. Defendant says he is not individually liable; that he held and owned same as trustee of a defined trust for the benefit of his five children: Helen Louise Gowing, Nathan Howard Gowing, Sarah French Gowing, Mary Naomi Gowing, and Daniel H. Gowing, and not individually.

(9) The facts in regard to the alleged trust, its creation, and the purchase and issue of such stock, are as follows: About December 31, 1890, the defendant, D. Henry Gowing, with his own money purchased five shares of the installment stock of the Syracuse Co-Operative Savings & Loan Association a corporation organized under and pursuant to the laws of the state of New York, of the par value of $200 each, in the name of "Helen Louise Gowing, D. H. Gowing, Trustee," and the stock was issued in that name. Thereafter defendant continued to pay with his own money the installments of $5 per month thereon until same matured on the 11th day of November, 1899. On that day said association paid to said D. H. Gowing, this defendant, said sum of $1,000 by its check drawn on the Bank of Syracuse payable to the order of "D. H. Gowing, Trustee Helen L. Gowing." Said Helen L. Gowing was then about 14 years of age. On or about the 15th day of January, 1890, defendant purchased with his own money ten shares of the stock of said association of the par value of $200 each, purchasing and taking five of such shares in the name of "Nathan Howard Gowing, D. H. Gowing, Trustee," same being issued in that name, and purchasing and taking the other five shares in the name of "Sarah French Gowing, D. H. Gowing, Trustee," same being issued in that name. Thereafter defendant paid with his own money the installments of $5 per month on such ten shares of stock until same matured, November 11, 1899, when said association by its two checks for $1,000 each, drawn upon the bank of Syracuse, paid same. One of said checks was payable to the order of "D. H. Gowing,

Trustee, Nathan H. Gowing," and the other to the order of "D. H. Gowing, Trustee, Sarah F. Gowing." Said Nathan H. Gowing was then about four years of age, and said Sarah F. Gowing was then about ten years of age. About May 1, 1890, defendant purchased in the same way of the same association five shares of its same stock of the same par value in the name of "Mary Naomi Gowing, D. H. Gowing, Trustee," same being issued in that name, thereafter paying the monthly installments with his own money, until maturity of the stock, November 11, 1899, when the association paid to defendant $1,000 by its check drawn on said bank payable to the order of "D. H. Gowing, Trustee, Mary N. Gowing." Said Mary N. Gowing was also an infant. About November 1, 1890, defendant purchased in the same way of the said association five other shares of said stock of the same par value in the name of "Daniel H. Gowing, Jr., D. H. Gowing, Trustee," same being issued in that name, and thereafter paid the monthly installments thereon until maturity, November 11, 1899, when there was paid to defendant by the association $1,000 by the check of the association drawn on said bank payable to the order of "D. H. Gowing, Trustee, Daniel H. Gowing, Jr." Said Daniel H. Gowing, Jr., was then one year of age. Thereupon, and on the same day, the defendant took the said five checks to the said American Exchange Bank of Syracuse, and informed its officers that he desired to invest said funds represented by said checks for the benefit of his children in the stock of said bank. Thereupon, and on the same day, the officers of said bank procured for the defendant from one J. J. Cummins a certificate of stock in said bank for 45 shares thereof, which was indorsed in blank by said Cummins, and same was delivered to the defendant, who, in payment therefor, duly indorsed and turned over said checks, and same were collected through said bank, and the proceeds turned over to said Cummins. Defendant then surrendered said certificate of stock to the cashier of said bank for transfer to "D. H. Gowing, Trustee," and defendant then received therefor certificate No. 123 for 45 shares of the stock of said bank issued in the name of "D. H. Gowing, Trustee," and defendant receipted for same under the name "D. H. Gowing, Trustee," and the stock stub stated that such stock was issued to "D. H. Gowing, Trustee." The cashier of the bank thereupon duly registered in the stock transfer book of the bank the transfer of said stock from said J. J. Cummins to "D. H. Gowing, Trustee," and opened an account in said book in the name of "D. Henry Gowing, Trustee," separate and apart from the account wherein was recorded the stock held by D. Henry Gowing individually and before referred to, and in such account registered or recorded the transfer of such stock from said J. J. Cummins to "D. H. Gowing, Trustee." At this date said Helen Louise Gowing had become 21 years of age. On the 2d day of July, 1902, the defendant surrendered said certificate of stock of the American Exchange Bank of Syracuse to the American Exchange National Bank of Syracuse, and there was issued in place thereof certificate No. 58 for 45 shares of the stock of said American Exchange National Bank, and same was issued in the name of "D. H. Gowing, Trustee," and the stub of said certificate in the certificate book showed the issuance of such stock to "D. H. Gowing, Trustee,"

and the defendant receipted for said stock by signing "D. H. Gow-ing, Trustee." This transfer was recorded in the books of the bank, and in the stock transfer book in an account opened and entered in the books thereof in the name of "D. H. Gowing, Trustee," and separate and apart from the account wherein was recorded the stock held by the defendant in his own name, "D. Henry Gowing." At this date Helen Louise Gowing and Sarah French Gowing had become 21 years of age.

On or about the 24th day of July, 1901, the defendant went to the office of the American Exchange National Bank of Syracuse and stated to the president and cashier thereof that he desired to purchase for the account of "D. H. Gowing, Trustee," five additional shares of the stock of said bank, so that it would make ten shares for each of his children. Thereafter the said officers procured and delivered to the defendant a certificate for five shares of the stock of said bank, which had been issued to Frank D. Hennessy, which was duly assigned in blank by said Hennessy, and the defendant then paid over to the cashier of said bank for five shares of stock represented by said cer-tificate $585 of his own money. The defendant then surrendered said Hennessy's certificate to the cashier for transfer to "D. H. Gowing, Trustee," and received in exchange therefor certificate No. 22 for five shares of the stock of said bank, which certificate was issued in the name of "D. H. Gowing, Trustee," and receipted for by the defendant under the name "D. H. Gowing, Trustee," and the stub for the newly issued stock stated that same was issued to "D. H. Gowing, Trustee." Said sum of $585 was charged upon an account kept in the name of "D. H. Gowing, Trustee for Helen L. Gowing, Sarah F. Gowing, N. Howard Gowing, Mary N. Gowing, D. Henry Gowing, Jr.," in the books kept by the defendant in his own business. This account was opened by the defendant in his own books November 11, 1899, the date when he received the checks from the savings and loan associa-tion. On that date the defendant charged himself in this account in his own books as follows:

"D. H. Gowing, Trustee for Henry L. Gowing, Sarah F. Gowing, N. Howard Gowing, Mary N. Gowing, D. H. Gowing, Jr., in account with D. H. Gowing. 1899, November 11, by check of Savings and Loan Association, $5,000."

And he credited himself with having paid for 45 shares of American Exchange Bank stock, $5,000. November 1, 1890, defendant credited himself in said account with having paid taxes on bank stock, $81.41; and December 19th with having paid taxes on bank stock, $17.86. January 21, 1901, defendant charged himself in said account with dividend on bank stock, $135; and July 3d charged himself with divi-dend on bank stock, $112.50. July 13, 1901, he credited himself in said account with having paid for the five shares of American Exchange Bank stock, $585; and in 1902, January 2, he charged himself in said account with dividend on bank stock, $125; and July 2d with the same amount; and in 1904 defendant in said account charged profit and loss, $186.77. The cashier of the bank recorded in the stock transfer book thereof the transfer of said stock from said Hennessy to "D. H. Gowing, Trustee," in the account of Hennessy, and also in the account

in said book in the name of "D. H. Gowing, Trustee," separate and apart from the account wherein was recorded the stock held by the defendant in his own name, "D. Henry Gowing." At this time Helen Louise and Sarah French Gowing were over 21 years of age.

January 1, 1901, a dividend check on the said 45 shares of stock for $135 payable to the order of "D. Henry Gowing, Trustee," was delivered to the defendant, and was indorsed by him, "D. H. Gowing, Trustee," and January 21, 1901, defendant deposited the same to his own credit in his own individual account. July 1, 1901, a dividend check on said 45 shares of stock for $112.50 was issued payable to the order of "D. H. Gowing, Trustee." This was properly indorsed in the same manner by the defendant and deposited by him in his own personal account. January 2, 1902, a third dividend check on the 50 shares of stock for $125 was issued, payable to the order of "D. H. Gowing, Trustee," and delivered to the defendant. The defendant indorsed same properly, "D. H. Gowing, Trustee," and deposited the same to his own individual credit in his own account. July 1, 1902, a fourth dividend check on said 50 shares of stock for $125 was issued payable to the order of "D. Henry Gowing, Trustee," and delivered to the defendant, who indorsed the same, "D. H. Gowing," and deposited the same to his own individual account in the American Exchange National Bank of Syracuse. The total dividends received were $497.50. The taxes paid were $99.27. The charge to profit and loss was made after the failure of the bank and the worthlessness of the stock had become apparent.

There is no suggestion in the statement of facts agreed upon that the defendant ever communicated to his children, or to either of them, that he had created a trust or set aside a trust fund or fund in trust for their benefit, or for the benefit of either of them, or that they or either of them had any knowledge of the transaction or transactions hereinbefore set forth. There is no suggestion in the facts stated that the defendant had in mind any time short of his death when the trust should be consummated by a payment over to the children, respectively, of the fund so set apart. There is no suggestion that the defendant at any time showed or delivered to either child the certificate of stock, or his book of account. Was it, as to each share, a tentative trust, a proposed trust or gift merely, the father, defendant here, retaining the title in himself? Or was title or some beneficial interest in the fund transferred to and vested in the children? I take it that there is a wide difference between the mere setting apart of a fund as a proposed gift in the name of the donor as trustee, the donor retaining the possession and control thereof with the right and power at any time to change his mind and appropriate the money or fund to his own use, without being under obligation to account to any one therefor, even though he has repeatedly and plainly declared to third persons his intent and purpose to create a trust and eventually make the gift, and a case where the money is actually set apart as a trust fund in the name of the donor as trustee, and he either notifies the beneficiary of such action, or passes to the beneficiary evidence of his title thereto or interest therein. Here we have a case which differs from both the cases just recited. The defendant not only set apart this money, in the first

instance, to the amount invested in the installment stock of the Co-Operative Loan Association, but he had that stock issued in the names of his children, respectively, adding "D. H. Gowing, Trustee," and when the stock matured and was paid the checks were payable to him, "D. H. Gowing, Trustee Nathan Howard Gowing," etc. When the defendant invested these funds in the original bank stock, he distinctly informed the officers of the bank that he "desired to invest said funds which he so held [in the form of such checks] for the benefit of his children" in the stock of said bank. The investment was, then, actually made for their benefit in the manner set forth. And at this time the defendant in his own books of account opened an account between himself as trustee for the children, naming them, and himself individually, in which, in effect, he declared that, as trustee for Helen L. Gowing, Sarah F. Gowing, N. Howard Gowing, Mary N. Gowing, and D. H. Gowing, Jr., he had received checks of the savings and loan association of the value of $5,000, and that as such trustee he had purchased and then held 45 shares of the stock of the American Exchange Bank. He subsequently received the dividends on this stock as trustee, but he put the money in his own individual account, from which he also paid the taxes on such stock. He subsequently paid $585 for five additional shares, having at the time $148.23 of money belonging to the trust fund, so that, assuming the $585 was not intended as a further gift, or proposed gift, to the fund, he as trustee then owed himself individually $436.77, and this indebtedness was by subsequent receipts of dividends reduced to $186.77, which on the failure of the bank he charged to profit and loss, as the trust estate, if there was one, was lost. The defendant's children had not all come of full age when the bank failed. All dealings with the checks received from the loan association and all dealings with and transfers of the bank stock were, on his own book and in the books of the banks, recorded and entered as with "D. H. Gowing, Trustee." Evidently, and I find as a fact, the defendant intended to make himself "D. H. Gowing, as Trustee," his debtor to himself, D. H. Gowing, individually, when he purchased the five additional shares of stock and intended to reimburse himself individually from the dividends. This is demonstrated by his method of keeping the account.

The question, under the decisions, is, not did the donor actually give and deliver the subject of the gift to the donee, or such evidences of title as demonstrate an executed gift, as in such case no question of trust would remain, but, rather, is there substantial evidence here of the creation of an irrevocable trust for these children, one created by the acts and accompanying declarations of the defendant, D. Henry Gowing, by transferring to D. Henry Gowing, as trustee for such children, the title to such stock. There can be no question that, had D. Henry Gowing died at any time after he purchased the bank stock, and had it issued in the manner he did, the children would have held it in equal shares as against his executors or administrators. His holding it until his death in that form, without proof of his declarations and entry in his own books, would have constituted satisfactory evidence that he had created, and intended to create, an irrevocable trust, not at his death and by his death, but at the time he set apart and invested the

money in the stock for them. Robinson v. Appleby, 69 App. Div. 509, 75 N. Y. Supp. 1, affirmed by Court of Appeals, 173 N. Y. 626, 66 N. E. 1115. The facts will be stated later. This is conceded by the opinion in Matter of Totten, 179 N. Y. 112, 125, 126, 71 N. E. 748, 70 L. R. A. 711. I discover no new doctrine or declaration of principle in that case. All the court decides is that a mere deposit by a person in bank of his or her own money, to his or her own credit, adding the words "in trust for" some person named, or "trustee for" some person named, without anything more being done, is not sufficient evidence that such person intended and created an irrevocable trust for the benefit of such named person and passed title to the fund so deposited to himself or herself as trustee for the benefit of the proposed beneficiary. But, if such person dies leaving the fund so deposited on deposit in the same way, then the fact that it is so left is sufficient evidence that a trust was created and intended to be created by the deposit made in that way as to all of the deposit not withdrawn. Says the Court:

"It is a tentative trust merely, revocable at will, until the depositor dies, or completes the gift [to the trustee in trust] in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary."

It is well settled that a gift cannot be "completed" until delivery of the thing itself, or means of possession, or legal evidence of title. But in these cases the gift to the trustee for the beneficiary may be completed in other ways, says the court, viz., "by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary." Clearly this is not intended to exclude all other "unequivocal acts and declarations" showing the intent and purpose of the donor 'to make the gift in trust irrevocable prior to his death and to vest the title in the trustee prior to that time. Neither is it intended to hold that the declaration must be made to the beneficiary of the trust, or that the act done must be one between donor, or depositor, and beneficiary of the trust. Establish such a rule, and it would be impossible to create such a trust for the benefit of a person over the seas or whose present whereabouts are unknown, unless by writing and mailing a letter "present address unknown." The contrary is decided by the Court of Appeals in Robinson v. Appleby, 173 N. Y. 626, 66 N. E. 1115, affirming 69 App. Div. 509, 75 N. Y. Supp. 1.

The question returns: Did D. Henry Gowing, by unequivocal acts and declarations at and about the time he so invested this money in this bank stock and took same into his possession, declare and evidence his intent and purpose, in presenti, to create an irrevocable trust for these children; to vest title to the bank stock and its proceeds and dividends in the trustee for them, they becoming the beneficial owners? That he could do so in his lifetime is established by the decision in Robinson v. Appleby, 69 App. Div. 509, 75 N. Y. Supp. 1, affirmed in 173 N. Y. 626, 66 N. E. 1115, and quoted and approved in Matter of Totten, 179 N. Y. 125, 71 N. E. 748, 70 L. R. A. 711. In that case one Helen C. Pratt, in 1887, deposited in savings bank $2,695, and received a pass book headed "Helen C. Pratt, in trust for Freddie Hemenway Robinson." Thereafter she made deposits to and withdrawals from the account. May 31, 1893, the balance was $2,740.

Mrs. Pratt then surrendered the pass book and transferred such balance to a new account, headed "Helen C. Pratt, in trust for Freddie H. Robinson. Note: not to be paid to F. H. R. until he is 30 years of age." She also signed the following paper which was in fact her application for opening the account:

"I desire to open an account with the Riverhead Savings Bank in my name in trust for Freddie H. Robinson. Said account to be governed by the by-laws, rules and regulations of the said institution. After my death the balance then due on said account is not to be payable to said Freddie H. Robinson until he is 30 years of age."

Both this paper and the pass book were left with the bank, but there was no pretense they were left to be delivered to or in trust for Robinson. There was no pretense the transaction was communicated to Robinson. Said Freddie H. Robinson, the beneficiary, died January 20, 1894, and four days later Mrs. Pratt, the donor, withdrew the whole sum. Later she died, and the administratrix of Robinson was held entitled to recover the amount of the deposit from the executors of Mrs. Pratt. In citing and commenting on this case, the learned Judge Vann, who delivered the opinion in Matter of Totten, supra, said:

"In this case the written declaration was so full and explicit that we had no difficulty in sustaining the trust as irrevocably established, when that paper was signed and delivered to the bank as custodian of the trust fund. There was much more than a mere deposit in the name of one person in trust for another, for an independent instrument was executed which not only declared the intention of the depositor, but directed when the account was to be paid to the beneficiary."

I see little force in the fact that the paper stated when the account was to be paid to the beneficiary, as, in the absence of such an expression or any expression on the subject, the law would fix the time at the death of the trustee which would terminate the trust.

In Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531, the father deposited money in the name of the son. He always retained possession of the pass book, and made one further deposit to the account and one withdrawal. The son had no knowledge of the transactions and there was no other declaration of trust. The son died before the father. Mr. Justice Andrews, in giving the opinion of the court, said:

"There was no declaration of trust in this case, in terms, when the deposit of July 5, 1866, was made, nor at any time afterwards, and none can be implied from a mere deposit by one person in the name of another. To constitute a trust there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created. * * * We are inclined to think that to infer a gift from the form of the deposit alone would, in the great majority of cases, and especially where the deposit was of any considerable amount, impute an intention which never existed, and defeat the real purpose of the depositor."

In Matter of Totten, supra, the learned judge reviewed the facts at length, and said:

"It was her practice to draw from all these accounts at will, whether they were kept in her name as trustee, or otherwise, and to close them and open others as she saw fit. She kept the pass books, and no beneficiary named in any account ever drew therefrom, except upon drafts signed by her. * * *

There was no evidence that the decedent ever spoke to any one about any of these accounts, or stated what her intention was in opening them. The accounts in question were opened with her own money, and no part thereof came from her brother Lewis. Out of thirty-one accounts in seven savings banks she paid over to the alleged beneficiaries the balance left when two thereof were closed, but in both of these instances, as well as in all other cases, she treated the accounts as her own, drawing against them and making new deposits from time to time as she thought best. All the pass books with a trust heading, containing accounts which had not been closed when the decedent died, were delivered to the respective beneficiaries, who drew the balance on hand. Emile R. Lattan did not know of the existence of any accounts on which he relies in this proceeding until more than a year after the decedent died. * * * The most favorable view of these facts and others of like character not mentioned does not permit the inference as matter of fact, that the decedent in making the deposits in question intended to establish an irrevocable trust in favor of the respondent. Aside from what took place when the deposits were made, every act of the decedent, with one exception, is opposed to the theory of a trust. That exception is the closing of one account after the words of trust had been canceled and the deposit of part of the proceeds in the same form as the original. This is not enough when considered with the other facts to establish an irrevocable trust. Cunningham v. Davenport, 147 N. Y. 43, 41 N. E. 412, 32 L. R. A. 373. 49 Am. St. Rep. 641. No connection was shown between any deposit and the sum held in trust by the decedent and her sister Angelica for Lewis H. Lattan, who is still living and was sworn as a witness at the trial. A deposit in favor of the son would not have satisfied the claim of the father, in the absence of a request from the latter, of which there was no evidence. In view of the practice of the decedent in doing business with savings banks, the custom of many other persons in that regard, the various objects which people have in making deposits in the form of a trust, the retention of the pass book with the corresponding control of the deposits according to the rules of the bank, the subsequent history of the various accounts with the frequent withdrawals and changes, we think that the form of the deposits as they appear upon the books was not strengthened by the other evidence."

It thus appears that the case was decided against the alleged trust, because of the utter absence of evidence of any intention to create a trust, or of any declaration of trust aside from the mere form of the deposit, and also because the other facts were opposed to and negatived such an intent.

In the case now before this court, there was the original investment by the father in the name of the children; the taking of the checks payable to "D. H. Gowing, Trustee, Helen L. Gowing," etc.; the investment of the identical money or checks in the bank stock; the declaration to the officers of the bank at the time that he desired to invest the same for the benefit of his children; the issuance to him of the stock as trustee; the opening of the account in the bank and in its books in relation to same, with Gowing as trustee; the opening by Gowing at the same time of the account in his own books of account, which would come to his children or to his executors or administrators in the event of his death, between himself as trustee for these children, naming them, and himself individually, in which he declares the trust and charges himself as trustee with the stock and its dividends; the subsequent purchase of other stock, etc.—all acts and statements declaring the existence in presenti of a trust and showing an intent and purpose to create an irrevocable trust. It seems to me very clear that on the admitted facts it appears satisfactorily and conclusively that the defendant not only intended to create, but did create

and declare orally and in writing, an irrevocable trust for the children. The title to the stock was in D. H. Gowing, trustee for these children, and not in him individually. There is no pretense that defendant did this for any purpose other than the benefit of his children. It was not done to evade taxes, or to defraud creditors, or to conceal his property, or secure the privilege of making deposits in a savings institution, which would draw interest, beyond the amount permitted by the rules of the institution to any one depositor. The only acts inconsistent with the existence of the irrevocable trust are the depositing by dedefendant of the dividend checks to his own personal account. But we have, first, the fact that a deposit account in bank as trustee for these children would have been a small affair, and one with which banks do not care to be bothered; and, second, the fact that Mr. Gowing evidently intended to invest these dividends for the children, as shown by the fact that he did purchase additional stock, charging the trust account with the money paid therefor, and crediting it with the dividends as received. I think the fact fully explained and divested of any significance, except that on the whole it tends to show the creation and existence of an irrevocable, not a tentative, trust.

The following cases are instructive and controlling: Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711; Robinson v. Appleby, 69 App. Div. 509, 75 N. Y. Supp. 1, affirmed 173 N. Y. 626, 66 N. E. 1115; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531; Matter of Bolin, 136 N. Y. 177, 32 N. E. 626; Sullivan v. Sullivan, 161 N. Y. 554, 56 N. E. 116; Cunningham v. Davenport, 147 N. Y. 43, 47, 41 N. E. 412, 32 L. R. A. 373, 49 Am. St. Rep. 641; Haux v. Dry Dock Sav. Inst., 2 App. Div. 165, 37 N. Y. Supp. 917, affirmed 154 N. Y. 736, 49 N. E. 1097; Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446; Mabie v. Bailey, 95 N. Y. 209; Willis v. Smyth, 91 N. Y. 297; Farleigh v. Cadman, 159 N. Y. 169, 171, 53 N. E. 808; Washington v. Bank of Savings, 171 N. Y. 166, 63 N. E. 831, 89 Am. St. Rep. 800; Matter of Bulwinkle, 107 App. Div. 331, 95 N. Y. Supp. 176; In re U. S. Trust Co. (Sup.) 102 N. Y. Supp. 271. Garvey v. Clifford, 99 N. Y. Supp. 555, 114 App. Div. 193; Lucas v. Coe (C. C.) 86 Fed. 972. In all of the cases we are brought to the proposition: Is there evidence showing the donor intended and sufficiently declared a trust, an irrevocable trust, or is it a tentative, or proposed, trust merely?

The complainant insists, however, that even if the evidence is sufficient to sustain the creation and existence of an irrevocable trust in D. Henry Gowing, as trustee for the benefit of the children named, as beneficiaries, it is not such a trust as is recognized by the Revised Statutes of the United States—section 5152 [U. S. Comp. St. 1901, p. 3465] (national banking act)—which reads as follows:

"Sec. 5152. Persons holding stock as executors, administrators, guardians or trustees, shall not be personally subject to any liabilities as stockholders, but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

The preceding section (5151) imposing the personal liability on shareholders in national banks, reads as follows:

"Sec. 5151. The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares."

But for this section, there would be no personal liability of the shareholders for an assessment of this description. The liability is statutory, and is imposed on the shareholders only. The only effect of section 5152 is to first declare a principle or proposition of law, viz.: That executors, administrators, guardians, and trustees are not personally liable, or personally subject to any liabilities, as stockholders on account of stock held by them as such; and, second, to impose the liability for such assessments, created by section 5151, on the estate or funds in the hands of such executors, administrators, guardians, and trustees. But for this section, there would be no liability for an assessment on stock in a national bank held by executors, administrators, guardians, or trustees, imposed on any one, either the estate, the executor, etc., as such, or personally. Neither section purports to create and impose a liability for such an assessment for such a purpose on any person who does not own the stock, but who has at some prior time owned it, or on the person who has in good faith purchased it for a lawful trust, one recognized by the law, voluntarily created by such person for the benefit of another or others. The crucial question is: did D. Henry Gowing, the defendant, personally own this stock or any beneficial interest therein, at the time the liability to an assessment thereon, under section 5151, Rev. St., arose? If he did not, in the absence of a fraudulent transfer to evade liability, etc. (McDonald v. Dewey, 202 U. S. 510, 26 Sup. Ct. 731, 50 L. Ed. 1128), he is not personally liable for this assessment on this stock in question (Beal v. Essex Sav. Bank, 67 Fed. 816, 15 C. C. A. 128; Lucas v. Coe [C. C.] 86 Fed. 972). In the last case, Coxe, now Circuit Judge, said:

"But it is argued that the section quoted [section 5152, supra] refers only to a trustee appointed by a will or by the order of a court or judge. The statute does not so say and there can be no question that the relation of trustee and cestui que trust may exist without such formal action."

In Beal v. Essex Sav. Bank, supra, opinion by Putnam, C. J., the court held:

"One who holds stock of an insolvent national bank as collateral security for a loan, which stock is registered upon the books of the bank in his name 'as collateral,' is not liable to assessment upon such shares under the statutory liability of shareholders."

To same effect is Pauly v. State Loan & Trust Co., 165 U. S. 606, 17 Sup. Ct. 465, 41 L. Ed. 844. However, in Nat. Bank v. Case, 99 U. S. 628, 25 L. Ed. 448, Marcy v. Clark, 17 Mass. 330, cited in McDonald v. Dewey, 202 U. S. 520, 26 Sup. Ct. 731, 50 L. Ed. 1128, and Pullman v. Upton, 96 U. S. 328, 24 L. Ed. 818, it was held, in effect, that one who takes stock in a national bank as security for a loan of money, and who puts his name on the registry as owner there-

of, incurs an immediate liability as a stockholder. But here the defendant did not put his name on the registry of the bank or in the certificate issued as owner, and the whole transaction with the bank and the entries in the books of the bank showed to it and all who examined the books that he was trustee merely. Whatever the true reasons may be for the holding of the courts in the cases cited, see a full statement Nat. Bank v. Case, 99 U. S. p. 631, 25 L. Ed. 448; Pauly v. S. L. & T. Co., 165 U. S. 621, 17 Sup. Ct. 465, 41 L. Ed. 844; Waite v. Dowley, 94 U. S. 527, 534, 24 L. Ed. 181, no one of them obtains here. By taking the transfers of the bank stock to "D. H. Gowing, Trustee," there being no fraud or insolvency, and fully informing the bank of the facts, he transferred the stockholder's liability to the trust estate, and not to himself, as he did not hold himself out as owner of the stock individually. The bank had full knowledge of the trust and of the names of the beneficiaries of the trust.

In Pauly v. State Loan & Trust Co., 165 U. S. 606, 17 Sup. Ct. 465, 41 L. Ed. 844, it was held:

"A creditor who receives from his debtor a transfer of shares in a national bank as security for his debt, and who surrenders the certificates to the bank, and takes out new ones in his own name, in which he is described as pledgee, and holds them afterwards in good faith as such pledgee and as collateral security for the payment of his debt, is not a shareholder, subject to the personal liability imposed upon shareholders by Rev. St. § 5151."

In this case, at pages 619 and 620 of 165 U. S., page 470 of 17 Sup. Ct. (41 L. Ed. 844), the court laid down certain rules as to the liability of shareholders of national banking associations, among which are the following:

"That if the owner transfers his shares to another person as collateral security for a debt due to the latter from such owner, and if, by the direction or with the knowledge of the pledgee, the shares are placed on the books of the association in such way as to imply that the pledgee is the real owner, then the pledgee may be treated as a shareholder within the meaning of section 5151 of the Revised Statutes of the United States, and therefore liable upon the basis prescribed by that section for the contracts, debts and engagements of the association. * * * That if one receives shares of the stock of a national banking association as collateral security to him for a debt due from the owner, with power of attorney authorizing him to transfer the same on the books of the association, and, being unwilling to incur the responsibilities of a shareholder as prescribed by the statute, causes the shares to be transferred on such books to another, under an agreement that they are to be held as security for the debt due from the real owner to his creditor—the latter acting in good faith and for the purpose only of securing the payment of that debt without incurring the responsibility of a shareholder—he (the creditor) will not, although the real owner may, be treated as a shareholder within the meaning of section 5151. That the pledgee of personal property occupies towards the pledgor somewhat of a fiduciary relation, by virtue of which, he being a trustee to sell, it becomes his duty to exercise his right of sale for the benefit of the pledgor."

This last-quoted rule distinctly recognizes that such stock may be held in trust by a trustee other than an executor, administrator, guardian, or trustee appointed by a court or judge. The pledgee is a trustee, made such by the pledgor and pledgee and operation of law. So, in the case now to be decided, Gowing was trustee of a trust voluntarily created, but one recognized in the law, and this fact appeared on the

books of the bank, and the certificate issued and the entries and account there kept showed to all stockholders, bank examiners, and creditors, and all the world, the true character of his holding and ownership.

In Pauly v. State Loan & Trust Co., supra, the court said:

"Does the statute, in letter or spirit, require that the word 'pledgee,' appended to the name of the party to whom certificates 308 and 309 were issued, should be entirely ignored? Is the holder of such certificates in no better condition, in respect of liability as a shareholder, than if such list had imported absolute ownership in the transferee?"

And then pointed out the intent and object of the statue, and then said:

"But this rule can have no just application when, as in this case, the creditors were informed by that list that the party to whom certificates were issued was not in fact, and did not assume to be, the owner of the shares represented by them, but was and assumed to be only a pledgee having no general property in the thing pledged, but only a right, upon default, to sell in satisfaction of the pledgor's obligation."

In Welles v. Larrabee et al. (C. C.) 36 Fed. 866, 2 L. R. A. 471, it was held:

"One to whom the shares are assigned in trust as security for a debt due a third person, and following whose name on the stockbook of the bank is the word 'trustee,' is not liable for the assessment, under section 5151, and is also within the provision of section 5152, exempting from such liability persons holding stock as trustees."

In Shaw v. Spencer, 100 Mass. 382, 97 Am. Dec. 107, 1 Am. Rep. 115, it was held that it is an erroneous assumption that the word "trustee," added to a name alone, has no meaning, or legal effect, and also that "the law holds that the insertion of the word 'trustee' after the name of a stockholder does indicate and give notice of a trust." In Duncan v. Jaudon, 15 Wall. (U. S.) 165, 21 L. Ed. 142, the Supreme Court of the United States cites and approves this case.

But it is contended that executors, administrators, guardians, and trustees are not authorized to invest the trust funds in the stock of national banks. This is true generally, but the rule has no application to a trust voluntarily created by a donor as to such stock. Generally the statutes of the states specify the nature of the investments which executors, etc., created by will, or appointed by the courts pursuant to statute, are authorized to make. If they find the money of the estate, when it comes to their hands, invested in good and safe securities, apparently, and they are guilty of no negligence, they may continue to hold them; but if they invest the money of the estate, or trust, represented by them in unauthorized securities, they may be treated as having converted the funds, and the securities so taken may be treated as their own individual property, or the persons entitled to the fund so invested may elect to ratify the transaction and take the securities in place of the money. They cannot do both. The court of its own motion cannot, however, ratify or recognize such an investment by executors or guardians as lawful. It is unnecessary to decide what the effect would have been had Mr. Gowing received the money on this stock after he had declared the irrevocable trust, which he did when he put the money into the stock and took the stock as

trustee and opened the accounts in the form he did, and then invested it in the stock of some other bank, although I am inclined to the opinion he would not have been controlled by the statutes relating to and governing statutory and testamentary trustees. Diven v. Lee, 36 N. Y. 302, and King v. Talbot, 40 N. Y. 76, have no application here.

It is unquestionably true that a solvent person may purchase with his own money and set apart any species of property, not prohibited by law, as a trust fund for another; and in such case, if the donor sufficiently declares the trust and makes it irrevocable, and not tentative merely, and the property is properly transferred, by writings when required, the property so set apart and invested becomes trust property, and is owned by the trustee as such. Matter of Estate of Straut, 126 N. Y. 201, 27 N. E. 259. Of course, such trusts must be for lawful purposes, and not forbidden by law. Parker v. Robinson, 71 Fed. 256, 18 C. C. A. 36, and Hampton v. Foster (C. C.) 127 Fed. 468, have no application here. As stated in the last case cited, under the Massachusetts practice the trustee cannot be sued at law as such, but the action must be against him as an individual, and his description as trustee in the writ and declaration is surplusage. Whether, in case judgment goes against him, it is to be enforced in some other way, or he is to be reimbursed from the trust funds, is another question, and, under the Massachusetts practice, is settled in another tribunal. No such practice obtains in the state of New York, and by statute these actions in the United States courts must follow the practice of the state in which brought. Here the action against the trustee to enforce a liability of the trust estate must be against him as trustee, and he must be so described in the summons and complaint. Such a liability cannot be enforced against him individually, and if he is sued individually and so named, and the cause of action is not against him individually, but in fact against him as trustee and to enforce a trust liability, there must be an amendment, or the action will be dismissed. So, if sued as trustee when the cause of action is against him personally, the action must be dismissed. Griswold v. Watkins, 20 Hun, 114; Baylie's Code Pleading (2d Ed.) 171. However, the complaint governs, and its allegations determine whether the action is against a defendant in his representative capacity. Beers v. Shannon, 73 N. Y. 292; Stilwell v. Carpenter, 62 N. Y. 639; Litchfield v. Flint, 104 N. Y. 543, 11 N. E. 58; Spooner v. D. L. & W. R. Co., 115 N. Y. 22, 21 N. E. 696; Knox v. M. El. R. Co., 58 Hun, 517, 12 N. Y. Supp. 848. In New York the distinction between actions at law and in equity is largely done away with, but no judgment under our practice can go against a trustee personally, when the liability is that of the estate or trust he represents. In Massachusetts, as stated, the practice is different.

There is no question in this case that the trust estate represented by D. Henry Gowing, as trustee, is liable for any assessment made against it on account of this stock held for it, but the defendant, D. Henry Gowing, personally, is not, and any assessment made thereon or on account thereof against D. Henry Gowing, personally, is not enforceable against him or collectable of him from his individual estate. In

Davis v. Weed, 44 Conn. 581, Fed. Cas. No. 3,658, it is held, as to section 5152, Rev. St. U. S., before quoted, that the principal object of this section is to prevent a personal liability from running against the persons named therein who have purchased in their representative capacity, or to whom national bank shares have been transferred as such representatives for the benefit of the trust estate. In Irons v. Manufacturers National Bank (C. C.) 27 Fed. 591, it is held:

"Section 5152, p. 3465, U. S. Comp. St. 1901, is designed to protect those holding such stock in a representative capacity from any personal liability, and only makes the funds in their hands or under their control liable."

Section 5210 of the National Banking Act [U. S. Comp. St. 1901, p. 3498] requires that such banks keep a correct list of all stockholders with the number of shares held by each, which shall be at all times open to the inspection of shareholders and creditors of the institution and state officers authorized to impose taxes. These books and lists are always open to the inspection of bank inspectors. In Pauly v. State Loan Association. (before referred to) 165 U. S. 621, 17 Sup. Ct. 465, 41 L. Ed. 850, it is held that the section was intended to give creditors and state officers opportunity for information as to the liability and responsibility of shareholders.

As the books of the bank showed that Gowing was trustee, and held the stock as such, and all were put on inquiry, and as the bank knew the facts, there is no reason for holding Gowing responsible for the assessment. The fact that the trust estate was wiped out of existence, so far as value or financial responsibility is concerned, by the failure of the bank, is no reason or justification for looking to the trustee personally. The opinion of Judge Coxe, in Lucas v. Coe (C. C.) 86 Fed. 972, is quite clear and emphatic on that proposition.

The conclusion is that the defendant is not personally liable for the assessment made on the 50 shares of stock issued to "D. H. Gowing, Trustee," and there will be a judgment accordingly.