## SLAUGHTER v. QUIGLEY et al.
### No. 4710.

District Court, D. New Jersey.
Dec. 17, 1934.

Bourgeois & Coulomb, of Atlantic City, N. J. (William B. Hunter, Jr., of Atlantic City, N. J., of counsel), for plaintiff.

Endicott & Endicott, of Atlantic City, N. J., for defendants.

AVIS, District Judge.

The bill of complaint alleges that the defendant Robert J. Quigley, on December 12, 1928, and some time prior thereto, was the owner of 60 shares of the capital stock of Atlantic City National Bank; that on that date the defendant Robert J. Quigley caused said shares of stock to be transferred and assigned to himself as trustee for Mary R. Quigley, his daughter, who was then a minor; that on January 30, 1933, the said bank was declared insolvent by the Comptroller of the Currency; that plaintiff was duly appointed receiver of said bank, and that on or about February 8, 1933, the comptroller made an assessment and requisition upon the shareholders of said bank for $300,000, being at the rate of $100 per share.

The bill further alleges that the said Mary R. Quigley has no beneficial interest in the said shares of stock; that the true owner thereof, for the purpose of answering to the assessment, is the defendant Robert J. Quigley, who, it is claimed, has always received the dividends paid on said stock, and prays that the alleged transfer to defendant, as trustee, may be set aside; and that the defendant may be decreed to be liable to plaintiff for the full amount of the assessment, to wit, $6,000 with interest thereon from March 15, 1933.

At the hearing, practically all of the allegations of the bill, so far as they related to the facts, were admitted to be true.

The defendant, in support of his claim that he is not legally liable for the amount of the assessment, presented a written declaration of trust, created and signed by himself, and naming himself as trustee, by which it appears that on December 12, 1928, he created a trust of the 60 shares of bank stock, and provided therein that the trustee should hold said shares, collect the income therefrom, pay same to Quigley during his lifetime, after his decease to his wife, Agnes Quigley, and upon the death of his wife to pay the principal and accumulated income unto his daughter, Mary R. Quigley. This trust agreement contained a provision that it was irrevocable, and was signed and acknowledged only by the said Robert J. Quigley. It appears that this agreement, since its execution, has been in the possession of the said Robert J. Quigley.

Many cases hold that the real owner of the shares may be held responsible, although the stock is not in fact registered in his name, and I assume that the law is clear that the actual owner cannot escape liability by transferring stock, or having it registered in the name of a third person.

See Ohio Valley National Bank v. Hulitt, 204 U. S. 162, 27 S. Ct. 179, 51 L. Ed. 423; Corker v. Soper (C. C. A. 5) 53 F.(2d) 190, certiorari denied Corker v. Howard, Receiver, 285 U. S. 540, 52 S. Ct. 313, 76 L. Ed. 933; Laurent v. Anderson (C. C. A. 6) 70 F.(2d) 819.

In the instant case, entirely different circumstances are encountered. The defendant Robert J. Quigley honestly, I believe, endeavored to create a trust for the benefit of himself and his family, without any thought or intention, at the time, of evading or attempting to evade the liability of an assessment upon the stock. It appears by the evidence that the stock at that time had a market value of approximately $60,000, and seemingly no person would fraudulently endeavor to escape liability for an assessment of $6,000 with stock then having a much greater value.

The defendant was the owner of the stock when he made the trust agreement, in which he reserved to himself the income for life, to his wife after his decease, and remainder to his daughter, Mary R. Quigley, an infant at that time about six years of age. This trust agreement does not have the effect of relieving the defendant from the responsibility of paying the assessment.

In the case of Early, Receiver v. Richardson, 280 U. S. 496, 497, 498, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658, the Supreme Court had certified to it by the Circuit Court of Appeals for the Fourth Circuit, 42 F.(2d) 1014, the following question of law:

"Is one, who purchases shares of stock of a national bank, liable for an assessment subsequently imposed by the Comptroller of the Currency upon the stock for the benefit of the creditors of the bank after the insolvency thereof, when it appears that the purchaser bought the stock from the registered holder thereof and received a certificate therefor endorsed in blank by the holder, with intent at the time of such purchase and delivery of giving the stock to his minor child, but without knowledge at that time of the failing condition of the bank, or intent to avoid the stockholder's liability, and when, after the acceptance of the endorsed certificate from the seller, and before the insolvency, the purchaser with like knowledge and intent, promptly presents the certificate to the bank, causes the shares to be registered and a new certificate to be issued in the child's name?"

The third syllabus in that case correctly defines the decision of the court and reads as follows:

"One who in good faith purchases stock of a national bank with the intention of making a gift thereof to his minor children, and causes the transfer to be made to them upon the books of the bank and certificates to be issued in their names, is, nevertheless, liable for assessments on the stock made subsequently for the benefit of creditors, when the bank becomes insolvent, since the transferees, being minors, are without legal capacity to assume the obligation, and the transfer, having resulted to their disadvantage, will be avoided for them by the law."

As to the liability of the father, the person who owned the stock, and who directed that it issue to his son and daughter, the court said:

"The real question is whether the intent of Richardson to buy the stock for his minor children, and the fact that by his direction the transfer was made to them upon the books of the bank and certificates issued in their names, had the effect of relieving Richardson from liability. We think not, since the transferees, being minors, were without legal capacity to assume the obligation. Upon coming of age they would have an election either to affirm or avoid the entire transaction. In the meantime, the transfer of the stock having resulted to their disadvantage, the law will avoid it for them, thus leaving the liability of Richardson for assessments unaffected. See Aldrich v. Bingham [D. C.] 131 F. 363; Foster v. Chase (Foster v. Wilson) [C. C.] 75 F. 797." Page 499 of 280 U. S., 50 S. Ct. 176.

In an opinion which fully discusses the principles and cases involved, Judge Kenyon for the Circuit Court of Appeals of the Eighth Circuit, in the case of Riley v. Bondi, 64 F.(2d) 515, page 517, held that an infant in whose name bank stock is taken is not liable for assessment, and, as to the liability of the transferor, said:

"The National Bank Act, Rev. St. § 5151 (12 USCA § 63) contemplates that on every share of stock held in a national bank some one shall be legally liable for assessment. Where stock is held in the name of an infant, this person will normally be his transferror, since as regards the liability for assessment the transfer necessarily remained incomplete. Thus, where a father in his own name and with his own funds buys stock in a national bank, intending to make a gift of the same to his infant child, and does make such gift by having new certificates issued in the name of the child, the father's liability to assessment is clear, for in such case the father is the transferror."

In the case of Miller v. Van Zandt (C. C. A. 5) 67 F.(2d) 901, the court held that the purchaser of stock in a national bank, for the purpose of giving it to minor relatives, though directing that stock be issued in names of minors, is liable for stockholder's assessment.

Counsel for defendant calls attention to the case of Fowler v. Gowing (C. C.) 152 F. 801, in which the District Court of the Northern District of New York held that a trustee was not liable for assessment where moneys of minors had been invested in national bank stock in the name of the father in trust for his minor children. It appears in that case that the money invested was procured by the father from the maturity of

building association stock originally taken out by him, and on which stock all payments were made by him. This case was affirmed on appeal. See Id. (C. C. A.) 165 F. 891.

The facts in that case differ considerably from the facts in the instant case. There the stock was never listed in the name of the father, nor did he have any actual interest in the principal or income. If, however, it is in point, and could otherwise be considered as a precedent in the instant case, I believe the principle there stated has been overruled by the decision of the Supreme Court in the case of Early, Receiver v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658, supra.

In the case of Heiden v. Cremin (C. C. A. 8) 66 F.(2d) 943, the court refused to hold a trustee liable for assessment, where it appeared that the stock had never been in the name of the trustee as an individual, distinguishing the facts from those in the case of Early, Receiver v. Richardson, supra, where the stock had originally been issued to the trustor. In that case certiorari was denied by the Supreme Court. See Heiden v. Cremin, 290 U. S. 687, 54 S. Ct. 123, 78 L. Ed. 592.

I find as facts:

(1) That the defendant Robert J. Quigley, prior to and on December 12, 1928, was the owner of the 60 shares of capital stock of Atlantic City National Bank.

(2) That on the latter date said Quigley executed a trust agreement, naming himself as trustee, wherein he placed said shares of stock in trust, the income therefrom to be paid to himself during his lifetime, and to his wife after his decease, remainder to his daughter, Mary R. Quigley, a minor, both as to principal and accumulated income.

(3) That on or about February 8, 1933, the Comptroller of the Currency ordered an assessment against the shareholders of Atlantic City National Bank, an insolvent bank, at the rate of $100 per share.

My conclusions of law are:

That under the facts and the precedents cited herein, the defendant Robert J. Quigley is liable for the assessment made against the 60 shares of stock by the Comptroller of the Currency.

Accordingly, plaintiff is entitled to a decree that he recover from the defendant Robert J. Quigley the sum of $6,000, with interest thereon from March 15, 1933.